UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL E. JACKSON, | Case No. C14-1121-JCC-JPD |
| Petitioner, | REPORT AND RECOMMENDATION |
| v. | |
| UNITED STATES PAROLE COMMISSION, | |
| Respondent. | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court upon a writ of mandamus pursuant to 28 U.S.C. § 1361 filed by petitioner Michael E. Jackson, who is proceeding *pro se* and *in forma pauperis*. Dkt. 8. Specifically, petitioner asks the Court to compel respondent United States to "immediately conduct his parole revocation hearing" as required by statute, "re-parole petitioner immediately . . . and retroactively credit petitioner's loss of supervised release days for unreasonable delay and prejudice incurred from the delay." *Id*. at 1. The United States promptly filed a response, Dkt. 6, to which petitioner replied. Dkt. 9. The United States also filed a surreply on September 19, 2014, Dkt. 12, pursuant to the September 10, 2014 Order of the Court. Dkt. 11. After careful consideration of the petitioner's writ of mandamus, the parties' briefs, the governing law and the balance of the record, the Court recommends that

REPORT AND RECOMMENDATION
PAGE - 1

petitioner's writ of mandamus, Dkt. 8, be DENIED as MOOT, and this action be DISMISSED with prejudice.

## II.  DISCUSSION

### A.  Factual Background

Petitioner is currently detained at the Sea-Tac Federal Detention Center ("FDC") as the result of violating the conditions of both his term of parole and period of supervision. This mandamus action chiefly involves petitioner's violation of his current term of parole. Specifically, petitioner is subject to the supervision of the United States Parole Commission (the "Commission") as a result of his 1988 conviction for an armed bank robbery committed in 1986. Petitioner was sentenced to a fifteen-year term of imprisonment, and was released on parole in April 1996. In addition, petitioner is subject to a term of supervised release as a result of his 1996 conviction for possession of an unregistered sawed-off shotgun that lacked a serial number. *See United States v. Michael Jackson*, CR97-191-JCC.[1] For this offense, he was sentenced to a mandatory fifteen-year sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(d), to be followed by five years of supervised release.[2]

The facts giving rise to the current violations of petitioner's period of supervision and parole are as follows. After petitioner was released from custody on August 29, 2013 (following a prior revocation of his supervised release and parole), he was required to reside at a Residential Reentry Center. Within two weeks, petitioner complained to his probation officer Michael Larsen about being required to pay 25% of his weekly earnings to the Center as a subsistence payment. Rather than petition the court for a modification of the subsistence

---

[1] Petitioner committed this offense within seven months of his release on parole. Petitioner's parole was therefore revoked as a result of this new crime, and he served an additional three years and eleven months after completion of the sentence on the new charge. Dkt. 12 at 2 fn.1.

[2] Not relevant to this proceeding, petitioner has had three prior second degree burglary convictions under Washington law, as well as convictions for attempted grand larceny, forgery, and second degree assault. Dkt. 12 at 2 fn. 2.

payment, petitioner declined to pay and was removed from the residence on September 10, 2014. Dkt. 12, Exs. A and C.  Petitioner was admitted to a Clean and Sober residential program, and remained there until October 17, 2013, when he absconded from supervision. Dkt. 12, Exs. A and C.

Petitioner was arrested on November 1, 2013, on a warrant resulting from his violations of supervised release. *See* CR97-191-JCC (Dkt. 77).  On November 12, 2013, following an evidentiary hearing before the Honorable John C. Coughenour at which petitioner was represented by counsel, petitioner was again found to be in violation of the terms of his supervised release because he had failed to notify his probation officer of his new residence. *See* CR97-191-JCC (Dkt. 82).  The court revoked supervision, and sentenced petitioner to serve a sentence of 30-days imprisonment to be followed by forty-eight months of supervised release. *See* CR97-191-JCC (Dkt. 83).  Petitioner completed the 30-day sentence imposed for his supervised release violations in late November 2013.

With respect to petitioner's violation of the terms of his parole, U.S. Probation Officer Robin Elliott met with petitioner at FDC on November 15, 2013.  Ms. Elliott presented petitioner with a copy of the application for the parole warrant that was issued on October 19, 2013, and petitioner agreed to proceed with a preliminary interview without the presence of counsel. Dkt. 12, Ex. C ("Summary Report of Preliminary Interview").  Petitioner was advised that there were two charged violations of release, (1) violation of a special condition and (2) failure to report a change in residence.  At that time he admitted the first of the violations, i.e., the condition requiring the payment of 25% of his weekly income to the Residential Reentry Center, but denied the second violation. *Id.*[3]  Five days later, however, petitioner called Ms. Elliott and revoked his admission as to the first charge. *Id.*  Petitioner also informed

---

[3] The Honorable John C. Coughenour had found that petitioner violated an identical condition – failure to report a change in residence - during the revocation hearing of his supervised release on November 12, 2013. *See* CR97-191-JCC (Dkts. 77-83); Dkt. 12, Ex. C at 2.

1  Ms. Elliott during the preliminary interview that "he wants to return to prison to do his time
2  and be done with supervision."  Finally, at the end of the interview petitioner requested a local
3  revocation hearing because it would be a hardship for his family to have the hearing conducted
4  after his return to a federal institution, and asked to be represented by counsel at the hearing.
5  *Id*.

6        Ms. Elliott reported her findings to the Commission on November 27, 2013,
7  recommending that the Commission find probable cause for the violations.  *Id.*  Based on Ms.
8  Elliott's report, the Commission issued a warrant that was executed on November 29, 2013.

9        Petitioner's file reflects that no other action was taken by the Commission until
10 an Expedited Revocation Proposal was delivered to the Case Manager Coordinator at the FDC,
11 Jacklin Ash, on March 11, 2014.  Dkt. 12 (Brunner Decl.) at ¶ 5; Dkt. 12, Ex. D (cover letter
12 and "Expedited Revocation Proposal").  Ms. Ash provided the document to petitioner's case
13 manager, Antonia Ashford, who in turn presented this document to petitioner.  *Id*.

14       The Expedited Revocation Proposal advised petitioner that "[t]he Parole Commission
15 has found that you have violated the conditions of your release," because "the Commission has
16 found probable cause" on the charges of (1) violation of special condition and (2) failure to
17 report change in residence.  Dkt. 12, Ex. D.  The offer was to revoke petitioner's parole, with
18 no credit on the sentence given for the period when petitioner had absconded from custody
19 between October 17, 2013 and November 28, 2013, and granting him reparole on November
20 27, 2014 after the service of 12 months.  Dkt. 12, Ex. D.[4]  The cover letter that accompanied
21 the proposal provided that the signed Response to Expedited Revocation Proposal must be
22 received by the Commission either:

23

24     [4] The United States represents that the Commission's usual practice, when employing
25 the expedited revocation procedure, is to send its proposal to either the defendant's counsel, or (if no counsel has been appointed for the parole hearing) to the defendant's prison case
26 manager or other official in the Bureau of Prisons with the request that they present the proposal to the prisoner.  Dkt. 12 at 4.

REPORT AND RECOMMENDATION
PAGE - 4

> (1) Within 14 days of the date of this letter or;
>
> (2) If a hearing is already scheduled within 14 days of the date of this letter, no later than the day of the hearing. **If the Response to the Expedited Revocation Proposal is not received within the time frames outlined above, the releasee will have an in-person hearing,** and the proposed decision will not be binding on the Commission.

Dkt. 12, Ex. D (emphasis added). Petitioner did not sign the proposal, and Ms. Ashford returned the document to Ms. Ash, who placed the incomplete form back in petitioner's file. Dkt. 12 (Brunner Decl.) at ¶ 5.

The United States concedes that after petitioner failed to return the Response to the Expedited Revocation Proposal, no action was taken by the Commission to either schedule a parole revocation hearing or appoint counsel to represent petitioner. Petitioner initiated this action by filing his proposed writ of mandamus on July 18, 2014, requesting a parole revocation hearing. Dkt. 1. In fact, the Commission did not schedule a parole revocation hearing for petitioner until the Federal Defender Michael Filipovic, who was acting on petitioner's behalf by at least July 23, 2014, contacted the Commission months later. Mr. Filipovic assisted petitioner with responding to the expedited revocation proposal, which petitioner declined, and also represented him at the local revocation hearing that was finally held on August 20, 2014 at 1:00 p.m. Dkt. 12, Ex. A at ¶¶ 2-3.

The United States asserts that "the exact reasons why there was a substantial delay in scheduling Michael Jackson's revocation hearing remains undetermined, although Mr. Jackson's failure to return the Expedited Revocation Proposal appears to have played a role." Dkt. 12 (Brunner Decl.) at ¶ 4. The United States further notes that "the records of the Parole Commission offer no insight into why counsel was not appointed for Jackson after the preliminary hearing conducted by Robin Elliott." Dkt. 12 at 4.

At the conclusion of the hearing, a Commission hearing examiner found petitioner guilty of the two alleged parole violations. Dkt. 12, Ex. A. By notice of action dated September 2, 2014, the Commission provided petitioner with its decision to revoke his parole,

and continue his sentence until the full term date of his sentence, less any good time credits that he will have earned. *Id.*, Ex. B. The Bureau of Prisons' sentence computation for petitioner (completed by the Bureau of Prisons on September 15, 2014) states that petitioner's statutory release date is August 4, 2015, and he is projected to be eligible for release to home detention on March 12, 2016. *Id.*, Ex. E.[5]

B. <u>Governing Law</u>

1. *Petitioner's Right to a Parole Revocation Hearing Within 60-90 Days*

It is undisputed that the United States' delay in holding a parole revocation hearing for petitioner in this case violated the mandate of 18 U.S.C. § 4214, which addresses the revocation of parole. First, the statute provides that "any parole violator summoned or retaken . . . shall be accorded the opportunity to have . . . a preliminary hearing at or reasonably near the place of the alleged parole violation or arrest, without unnecessary delay, to determine if there is probable cause to believe that he has violated a condition of his parole[ .]" 18 U.S.C. § 4214(a)(1)(A). This takes the form of a preliminary interview conducted by a person designated by the Commission. 28 C.F.R. § 2.48. According to the applicable regulations, the purpose of the preliminary interview is to help the Commission "to determine if there is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a revocation hearing should be conducted." 28 C.F.R. § 2.48(a). If "the interviewing officer's recommended decision is that probable cause may be found to believe that the parolee has violated a condition (or conditions) of his release, the . . . [Commission] shall notify the parolee of his final decision concerning probable cause within 21 days of the date of the preliminary interview." 28 C.F.R. § 2.49(d)(2).[6]

---

[5] Petitioner's expiration full term date is November 27, 2017. *Id.*, Ex. E at 2.
[6] The regulations further provide that "notice of the parolee of any final decision . . . finding probable cause and ordering a revocation hearing shall state the charges upon which probable cause has been found and the evidence relied upon." 28 C.F.R. § 2.49(d)(3).

Where the defendant has been convicted of a new charge or has admitted the charged violations, the statute then requires that a parole revocation hearing take place within 90 days of the date on which a defendant is retaken by the Commissioner's warrant, i.e., execution of the parole violator warrant. 18 U.S.C. § 4214(c); 28 C.F.R. § 2.49(f). In all other cases, however, upon a finding of probable cause following the preliminary interview, the parole revocation hearing shall take place "within sixty days of such determination of probable cause[.]" 18 U.S.C. § 4214(a)(1)(B).

As discussed above, petitioner was properly provided with a preliminary interview by a designee of the Commission, Robin Elliott, on November 15, 2013. 18 U.S.C. § 4214(a)(1)(A); 28 C.F.R. § 2.48. This interview took place approximately two weeks following petitioner's arrest, and petitioner does not contend that this preliminary interview was unreasonably delayed. Although petitioner initially admitted to the first charge during his interview, he subsequently withdrew his admission and denied both charges. Mr. Elliott recommended that the Commission find probable cause for the charged violations, and the Commission apparently accepted that recommendation as the Expedited Revocation Proposal, dated March 11, 2014, states that "the Commission has found probable cause on the following charges…" Dkt. 12, Ex. D.

According to petitioner's file, however, he did not actually receive notice of the Commission's final decision concerning probable cause within 21 days of the date of the preliminary interview as required by 28 C.F.R. § 2.48(d)(2). Furthermore, petitioner was entitled to a parole revocation hearing within sixty days of that probable cause determination by the Commission, but did not actually receive a hearing until late August 2014. *See* 18 U.S.C. § 4214(a)(1)(B). The Commission therefore violated 18 U.S.C. § 4214 and the Commission's regulations by failing to provide petitioner with timely notice of the Commission's probable cause determination, and failing to conduct a timely parole revocation hearing.

2.     *Petitioner Must Show Unreasonable Delay and Prejudice*

The Commission's delay in holding a parole revocation hearing, without more, is insufficient to establish a constitutional violation. The Ninth Circuit has consistently held that in order to establish that the delay in holding a parole revocation hearing constitutes a due process violation, a parolee must demonstrate that the Commission's delay was not only unreasonable, but it prejudiced the parolee's rights. *See Vargas v. U.S. Parole Commission*, 865 F.2d 191, 194 (9th Cir. 1988) ("Even given a violation of the Commission's regulations, a due process violation occurs only when appellant 'establishes that the Commission's delay in holding a revocation hearing was both unreasonable and prejudicial.'") (*citing Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983)); *Hopper v. U.S. Parole Commission*, 702 F.2d 842, 845 (9th Cir. 1983) ("Even if Hopper were denied any statutory rights to a timely parole revocation and probable cause hearings, however, he would not be entitled to habeas relief" absent a showing that "the delay was unreasonable and prejudicial."). *See also Gaddy v. Michael*, 519 F.2d 669, 673 (4th Cir. 1975) (Federal courts have held that what constitutes a reasonable time to hold a parole revocation hearing, "just as the constitutional right to a speedy trial, may not be [considered] in absolute terms . . . To entitle the parolee to relief, the delay, taking into consideration all the circumstances, must be unreasonable; it must also be prejudicial. A decisive issue in these cases is prejudice.").

In *Hopper*, the Ninth Circuit noted that prejudice may result from "the loss of evidence relevant to show mitigating circumstances" or the lack of access to rehabilitative programs. *Hopper*, 702 F.2d at 845. Similarly, in *United States v. Wickam*, the Ninth Circuit stated that "[p]rejudice might result from delays causing probationers difficulty in contesting the alleged facts constituting a violation of their release conditions; hardship in finding and presenting favorable witnesses; or inability to produce evidence of mitigating circumstances which might result in continued probation despite the violation." 618 F.2d 1307, 1310 (9th Cir. 1979).

In a footnote in *Berg v. U.S. Parole Commission*, the Ninth Circuit rejected a petitioner's argument that he is entitled to credit for purposes of computing the time left on his original sentence because the Commission did not hold a timely revocation hearing. The Ninth Circuit acknowledged that "the 36 month delay between Berg's state imprisonment and his revocation hearing did violate the Commission regulations . . .[but] Berg has alleged no facts showing that the delay was unreasonable or that it caused him prejudice." 735 F.2d 378, 379 n.3 (9th Cir. 1984). The Ninth Circuit further observed that "in this situation, Berg is entitled only to a writ of mandamus compelling compliance . . . *a remedy which is now moot because the required hearing has been held.*" *Id.* (citing *Sutherland*, 709 F.2d at 732) (emphasis added). Other federal courts have similarly held that a parolee must demonstrate that prejudice is severe enough to render the revocation hearing inadequate in terms of relief. *See Northington v. U.S. Parole Commission*, 587 F.2d 2, 3 (6th Cir. 1978).

### C. Petitioner Has Not Established Prejudice Resulting from the Delay

The Court finds that the Commission failed to provide petitioner with timely notice of its probable cause determination, and failed to hold his revocation hearing within the statutory time limits. Indeed, the United States concedes that petitioner "was presented with the Commission's expedited revocation proposal some three months after the probable cause determination," and petitioner's August 20, 2014 parole revocation hearing was held at least six months late. Dkt. 12 at 7. The United States has failed to provide any explanation for this delay, and the Court therefore finds it to be unreasonable.[7]

---

[7] The United States' suggestion that petitioner is somehow at fault for failing to advise the Court at an earlier date that he was still awaiting a parole revocation hearing is distasteful. Dkt. 12 at 8. The Parole Commission has a statutory duty to act, and petitioner is not to blame for the Commission's shortcomings in this regard. Moreover, to the extent the United States attempts to blame the Commission's oversight on petitioner's failure to return the Response to Expedited Parole Procedure form, the Court suggests that the Commission re-examine its processes to ensure that a prisoner's failure to return a check-the-box form does not result in them being "lost in the shuffle" while awaiting a parole revocation hearing in the future.

As mentioned above, petitioner argues that he has been prejudiced by the delay in his parole revocation hearing because any additional time outside the statutory time limit "extends petitioner's 48 mos. supervised release date by the additional months petitioner was left to sit here at the FDC Seatac…months that respondents believe does not warrant relief until petitioner is paroled…which will take additional months before respondents issue a certificate of parole." Dkt. 9 at 4. Petitioner argues that Congress enacted time limits that govern parole revocation hearings, and "failure of the Courts to enforce these time limits would make a mockery of this clear legislative charge." *Id.* Thus, petitioner asked the Court to grant his writ of mandamus, reparole him immediately, and "retroactively credit petitioner's loss of supervised release days for additional months petitioner spent in FDC SeaTac that would have counted towards his supervised release." *Id.*

As egregious as the Commission's delay was in this case, petitioner has not demonstrated the requisite prejudice to establish a constitutional violation. Specifically, petitioner was convicted of the first charged parole violation based upon testimony at the hearing, including petitioner's statements that he had refused to pay the 25% subsistence charge and was removed from the residence. His probation officer Michael Larsen, who had advised petitioner that he was required to make the payments until he obtained an adjustment from the court, was also present at the hearing. Dkt. 12, Ex. 4. Petitioner also admitted to the second charge of failing to report his change in residence after he absconded from the Clean and Sober residential drug treatment program. *Id*. Thus, there is no evidence that the passage of time affected petitioner's ability to defend against the charges or present witnesses, and he does not claim that there was any mitigating evidence lost as a result.

Finally, petitioner's argument that the additional forty-eight month term of supervised release imposed by the district court would have started earlier if the Commission had conducted a timely revocation hearing is unpersuasive. Petitioner's term of supervised release will only start when he is released from custody. Following the parole revocation hearing, the

REPORT AND RECOMMENDATION
PAGE - 10

1   Commission decided to revoke petitioner's parole, and require petitioner to serve the
2   remaining balance of his original federal sentence less good time credit.  Dkt. 12, Ex. B
3   (providing that petitioner's parole is revoked and he shall "continue to expiration").[8]  This was
4   not improper.  *See* 28 C.F.R. § 2.52(b) (providing that if parole is revoked, the Commission is
5   required to determine whether reparole is warranted or whether the prisoner should be
6   continued for further review).  Most significantly, since petitioner returned to custody on the
7   Parole Commission's warrant he has received full credit against his federal sentence for the
8   time that the Commission has required that he serve before being released, including all the
9   time awaiting the parole revocation hearing.  *See* 28 U.S.C. § 2.52(c) ("A parolee whose
10  release is revoked by the Commission will receive credit on service of his sentence for time
11  spent under supervision[.]"); *Moody v. Daggett*, 429 U.S. 78, 84 (1976) (providing that once a
12  parolee is taken into custody on a warrant, the original federal sentence begins to run once the
13  warrant was executed).

14       Accordingly, petitioner has failed to show that the Commission's delay in holding his
15  parole revocation hearing impaired his ability to defend himself at the hearing, or otherwise
16  prejudiced him.  The Commission ultimately determined that petitioner committed the parole
17  violations, and has required petitioner to serve the remainder of his federal sentence.  Although
18  petitioner's parole revocation hearing was delayed by at least six months, his overall period of
19  incarceration will not be lengthened by the additional time he was kept waiting for his hearing.
20  Because petitioner has been afforded his parole revocation hearing, his writ of mandamus
21  seeking compliance with 18 U.S.C. § 4214 and the relevant regulations is now moot.  *See*
22  *Berg*, 735 F.2d at 379 n.3 (holding that a writ of mandamus compelling compliance is "a

---

[8] The Commission has the authority to require petitioner to serve the entire balance of his original federal sentence, which is 1,460 days.  *See* Dkt. 12, Ex. E (Bureau of Prisons sentence computation).

REPORT AND RECOMMENDATION
PAGE - 11

remedy which is now moot because the required hearing has been held.") (citing *Sutherland*, 709 F.2d at 732).

### III. CONCLUSION

Accordingly, the Court recommends that the petitioner's writ of mandamus, Dkt. 8, be DENIED as MOOT, and that this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 20, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 24, 2014**.

DATED this 29th day of September, 2014.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge